# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANCIS FORD,           :        No. 3:24-CV-1557
           Petitioner      :
                      :        (Judge Munley)
    v.                    :
                      :
WARDEN FMC ROCHESTER,[1]    :
           Respondent      :

## MEMORANDUM

Petitioner Francis Ford initiated the above-captioned action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He asks the court to order the Federal Bureau of Prisons (BOP) to "recalculate" his projected prerelease custody date with consideration of both his earned time credits under the First Step Act (FSA), Pub. L. 115-391, 132 Stat. 5194 (2018), and days he believes he is owed under the Second Chance Act of 2007 (SCA), Pub. L. No. 110-199, 122 Stat. 657 (2008). For the following reasons, the court must dismiss Ford's Section 2241 petition.

---

[1] When Ford filed the instant petition, he was incarcerated at FCI Schuylkill and named the warden of that facility ("Warden Rickard") as Respondent. (*See* Doc. 1 at 1). Ford has since been transferred to FMC Rochester. The court will therefore substitute the appropriate Respondent in this case. *See* 28 U.S.C. § 2242; <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 434 (2004) (noting that, in federal habeas proceedings, proper respondent is "the person who has custody over [the petitioner]" (alteration in original)); <u>Barry v. Bergen Cnty. Probation Dep't</u>, 128 F.3d 152, 162 (3d Cir. 1997) (citing <u>Braden v. 30th Jud. Cir. Crt. of Ky.</u>, 410 U.S. 484, 494-95 (1973) ("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.")).

## I.    BACKGROUND

Ford is currently serving a 63-month sentence imposed in 2023 by the United States District Court for the Eastern District of Virginia for Hobbs Act Robbery and Conspiracy to Commit Hobbs Act Robbery.  (Doc. 14-2 at 1 ¶ 3; Doc. 14-3 at 2).  His current projected release date, via FSA release, is October 8, 2026.  (See Doc. 14-3 at 2).

Ford lodged the instant Section 2241 petition in September 2024.  (See generally Doc. 1).  In that petition, Ford broadly requested a "complete review" of his FSA time credit calculations, but failed to proffer any argument or explanation as to why the BOP's FSA calculations were incorrect.  (See Doc. 1 at 9; Doc. 9 at 1-2).  The court thus ordered Ford to show cause as to why his Section 2241 petition should be granted, giving him 21 days to file an amended petition that properly set forth his argument or arguments regarding the alleged FSA credit dispute.  (See Doc. 9 at 2).

The day after the court issued its show-cause order, the court received an amended petition from Ford.  (Doc. 10).  In that amended petition, Ford asked the court to order the BOP to "recalculate" his prerelease custody date to include both FSA time credits and SCA placement days.  (See id. at 19).  Ford requests 6.3 months (ten percent of his sentence) in SCA days, and 12 months in FSA credits toward prerelease custody—for a total of 18.3 months' prerelease

2

custody—although he does not explain how he arrived at the 12-month FSA credit calculation.  (See id.)  Ford also responded to the show cause order.  (See Doc. 11).  However, that filing states only that he "was supposed to get 6 months halfway house" but was only given "75 days," apparently referring to SCA conditional placement days recommended by the BOP.  (See id. at 1, 4).

Respondent timely responded to Ford's Section 2241 petition and its supplements.  (See generally Doc. 14).  Ford did not file a traverse and the time for doing so has passed.  His Section 2241 petition, therefore, is ripe for disposition.

## II.  DISCUSSION

As best as the court can discern, Ford appears to contend that the BOP miscalculated his prerelease custody time and he should have been awarded 18.3 months in prerelease custody by combining his SCA days and FSA time credits.  Respondent counters that Ford failed to exhaust his administrative remedies and that, even if he had properly exhausted his claims, they are substantively meritless.  Respondent is correct on both accounts.

### A.  Exhaustion of Administrative Remedies

Although there is no explicit statutory exhaustion requirement for Section 2241 habeas petitions, the United States Court of Appeals for the Third Circuit has consistently held that exhaustion applies to such claims.  See Callwood v.

3

Enos, 230 F.3d 627, 634 (3d Cir. 2000) (citing Schandelmeier v. Cunningham, 819 F.2d 52, 53 (3d Cir. 1986)); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion allows the relevant agency to develop a factual record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy." Moscato, 98 F.3d at 761-62 (citations omitted).

The Bureau of Prisons has a specific internal system through which federal prisoners can request review of nearly any aspect of their imprisonment. See generally 28 C.F.R. §§ 542.10-.19. That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel. See id. §§ 542.13-.15.

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review. See Moscato, 98 F.3d at 761. Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if the issue presented is one that consists purely of statutory construction. See Vasquez v. Strada, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)). Exhaustion is likewise not required when it would be futile. Rose v. Lundy, 455 U.S. 509, 516 n.7 (1982); see Cottillion v. United Refining Co., 781 F.3d 47, 54

(3d Cir. 2015) (affirming, in ERISA context, futility exception to exhaustion requirement). "In order to invoke the futility exception to exhaustion, a party must 'provide a clear and positive showing' of futility before the District Court." Wilson v. MVM, Inc., 475 F.3d 166, 175 (3d Cir. 2007) (quoting D'Amico v. CBS Corp., 297 F.3d 287, 293 (3d Cir. 2002)).

The record plainly reflects that Ford did not exhaust his administrative remedies with respect to any prerelease custody claim. To date, Ford has filed only one administrative remedy while in BOP custody. (See Doc. 14-2 at 3 ¶ 8). That remedy, number 1206348-F1, concerned the Inmate Financial Responsibility Program (IFRP) and was denied by the warden in August 2024. (See Doc. 14-4 at 2). Ford did not appeal this denial to the Regional Director or the General Counsel (sometimes referred to as "Central Office"). (See id.; see also Doc. 14-2 at 3 ¶ 8).

Proper exhaustion requires an inmate to complete each step of their facility's grievance process and to do so properly so that the agency decides the issue on the merits. See Woodford v. Ngo, 548 U.S. 81, 90 (2006) (explaining that proper administrative exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (citation omitted)). Ford plainly failed to file a relevant administrative remedy regarding prerelease custody calculations, and his failure to do so

precludes this court from ruling on the merits of his Section 2241 petition.  See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 762 (3d Cir. 1996); Ryan v. United States, 415 F. App'x 345, 347 (3d Cir. 2011) (nonprecedential) ("As [Petitioner] readily acknowledges that he failed to exhaust available administrative grievance processes, the District Court was correct to dismiss his petition." (citing Moscato, 98 F.3d at 760)).

### B.    Merits of Prerelease Custody Claim

Even if Ford had exhausted his prerelease custody challenge, it is likely meritless.  Ford is not entitled to any particular amount of prerelease custody time under the Second Chance Act, and his assertion of being owed 12 months of FSA credits toward prerelease custody is simply incorrect.

First, as to Ford's claim that he should be given 6.3 months of SCA conditional placement days (ten percent of his 63-month sentence) rather than the 75 days the BOP recommended, that claim is a nonstarter.  The law is well settled that the award of prerelease custody days under the SCA is statutorily committed to the exclusive discretion of the BOP, and thus an inmate has no right or entitlement to a certain amount of SCA prerelease custody.  See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 251 (3d Cir. 2005) (explaining, with reference to the SCA, "that the BOP may assign a prisoner to [prerelease custody] does not mean that it must").  All that is required is a good-faith,

individualized review of an inmate's potential transfer to prerelease custody,
which review must consider the statutory factors set forth in 18 U.S.C. § 3621(b).
See id.; Brown v. Warden Fairton FCI, 617 F. App'x 117, 119 (3d Cir. 2015)
(nonprecedential).  Ford received this individualized determination, (see Doc. 11
at 4), and thus he is not entitled to any further relief with respect to the Second
Chance Act portion of his habeas claim.  See Brown, 617 F. App'x at 119.

Next, Ford claims—without any support or explanation—that he is entitled
to 12 months of FSA credits toward prerelease custody.  Ford is mistaken.  Per
the latest FSA Time Credit Assessment on record, (see Doc. 14-5), Ford has
accrued 240 days of FSA credits.  (See id. at 1).  The BOP has chosen to apply
those credits toward early release rather than toward time in prerelease custody,
resulting in Ford's release date being advanced by 240 days.  (See id.; Doc. 14-3
at 2).  Whether to apply FSA credits toward early release or toward early
placement in prerelease custody is statutorily committed to the BOP's discretion.
See 18 U.S.C. § 3632(d)(4)(C) ("The Director of the Bureau of Prisons shall
transfer eligible prisoners, as determined under section 3624(g), into prerelease
custody or supervised release.").  The FSA component of Ford's claim is
therefore both fatally undeveloped and meritless.

In sum, because Ford failed to exhaust his administrative remedies, the
court must dismiss his Section 2241 petition.  See Moscato, 98 F.3d at 762;

7

Ryan, 415 F. App'x at 347. Even if Ford had properly exhausted his claims, those claims appear to lack any basis in law or fact.

## III.    CONCLUSION

Based on the foregoing, the court will dismiss Ford's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. An appropriate Order follows.

Date: 6/6/25

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

8